## GOOD *v.* BAILEY and others.

(*Circuit Court, E. D. Pennsylvania.* November 9, 1887.)

PATENTS FOR INVENTIONS — INFRINGEMENT — FLAX-DRAWING MACHINES — IMPROVEMENT.

 Letters patent No. 95,462 were issued October 5, 1869, to Good, for an improvement in flax-drawing machines. Both sets of gill-pins are carried by endless chains, but, as stated in his application for a patent for an improvement in 1885, the working pins of one belt cannot be brought very close to those of the other, and, on account of this break of very considerable length between the working portions of the two belts, the machine. while it works well for a long fiber, does not work as well for a shorter one. The slower moving series of pins of the Bailey & Lewis machine are operated by screws, and are brought into and carried out of action by means of cams upon the screw-rods, which raise or lower their carrying bars; and the gill-pins in the faster-moving series are divided between an upper and a lower endless chain; the pins of one chain alternating with the other. These, with the other mechanical devices connected therewith, admit of a much closer relation between the two series of bars and pins than is found in complainant's machine, and as close as is desirable to have them. *Held,* that the difference, though slight, is very important, and is no infringement.

In Equity. Bill for injunction.

Bill by Good, complainant, against Bailey & Lewis, defendants, to enjoin the infringement of certain letters patent granted complainant for an improvement in flax-drawing machines.

*Gifford & Brown* and *W. A. Redding,* for complainant.

*W. H. Doolittle* and *Crawford & Dallas,* for respondent.

BUTLER, J. The suit is brought for infringement of letters patent No. 95,462, granted October 5, 1869, to Good, for an improvement in flax-drawing machines. The validity of the patent, and the alleged infringement, are denied by the answer.

As respects the first, little need be said. The patent was granted nearly 20 years ago. The machine went into use soon after, and has continued to be employed throughout the country ever since. It was valuable, and displaced machines previously used for the same purpose. The validity of the patent has never been questioned save in this instance. Such acquiescence is extraordinary, and of itself is entitled to much weight in considering the question now raised. We have found nothing in the record to justify an adverse decision; nothing sufficient to overcome the presumptions arising from the patent, and the acquiescence referred to. The history of the art, and the record of the complainant's application and proceedings thereon, however, forbid a liberal construction of the claim. All the elements employed in forming the combination are old. The combination alone is new, and this differs so slightly from that of machines previously manufactured or described that the claim for it can only be sustained in connection with the special mechanical devices employed in forming it. We do not mean to say, or suggest, that its operation may be avoided by the mere substitution of known equivalents; but we think it may by the employment, instead, of other

devices, a more perfect combination,—one better adapted to the contemplated use,—though this combination may have the same general character.

Has the respondent infringed? His machine is intended for the same purpose as complainant's, to do the same work, substantially by the same method, and was probably suggested by it. This, however, is not very important. The complainant's machine was not the first of its kind. Similar machines in most respects—designed for the same work, and doing it in substantially the same way—were described and constructed long before. His combination, however, was slightly different, and this difference produced a better machine. Is the respondent's combination the same? This is the important question. The mechanical construction of the parts is different. A comparison of the two machines by Mr. Appleton, an expert, is substantially accurate:

"In complainant's (Good's) patent, as before testified to, both sets of gill-pins are carried by endless chains, and the points of the gill-pins in operation are presented in a plane, in consequence of the arrangement of the sprocket wheels over which such chains pass and through the instrumentality of the bell cranks, O, provided with pins and grooves co-operating with the fixed cams, P, B, and the guide plates, H. Whereas, in the Bailey & Lewis machines inquired of, the bars carrying the gill-pins of the rearmost or slower-moving series are operated by screws, and such pins are brought into and carried out of action by means of cams upon the screw-rods, which raise and lower their carrying bars from a lower to a higher plane, and *vice versa*, while such pins are held at all times in the same, or substantially the same, relative position with respect to the horizon; and the gill-pins of the forward or faster-moving series, while carried by endless chains, are divided between an upper and a lower chain, which are so arranged as to make the pins of one chain alternate with the pins of the other, the points of the pins of both chains in operation being presented in a plane through the instrumentality of the chain-carrying wheels, blocks, $c^2$, upon the ends of the bars, carrying the gill-pins engaging with guide-ways, $f^2$, $f^2$, in the sides of the machine frame and gears, $H^2$, upon said bars, meshing with movable guides, $J^2$, $J^2$, etc., surrounding the shafts of the wheels around which the chains pass, by which means the gill-pins are maintained at all times in the same relation with respect to the horizon as is the case with the rearmost or slower-moving series."

The substitution of a screw for the chain, to operate the slower-moving series of pins, of itself we would consider unimportant, if it performed no other function than the chain. In such case, it would be simply an equivalent for the latter. Nor would we consider the devices for dropping the pin-bars, instead of revolving them, in this series important, if the effect was the same as that produced by the complainant's chain and attachments in this respect. It is quite clear, however, that the screw, and mechanical devices connected therewith, for operating and dropping the bars, admit of a much closer relation between the two series of bars and pins than is found in the complainant's machine. If this difference was immaterial, if the closer relation was of no value, it would, of course, be an unimportant difference, and would not, therefore, distinguish the machine. The testimony, however, leaves no doubt that it is of essential value; and that the distance between the series in the complainant's ma-

chine was a recognized defect. This is so clearly stated by the complainant himself in an application for another patent, intended to remedy the defect, (granted in 1885,) that it is unnecessary to do more than repeat what he says:

"In such machines, [the complainant's here involved,] the drawing or spreading of the fibrous materials is performed by means of two or more endless belts or aprons, furnished with combing or hacking pins, and arranged one before the other, and running at different velocities; the operating points of the pins on the two belts being in, or nearly in, the same plane, and all said pins being presented in an upward direction during the time they are in operation. Such machines have proved very efficient in their operation to cause the two belts of pins traveling at different velocities to thoroughly comb and straighten the hemp, flax, or other materials during the travel of the fiber through or over the frame or machines, and while the fibers are free at both ends, but are subject to one objection, viz., that when the pin-carrying belts are arranged so that both present their operating points upward, or in the same direction, the working pins of one belt cannot be brought very close to those of the other belt, and consequently a break of such considerable length is left between the working portions of the two belts that, although the machine works well for a long fiber, it does not work as well for shorter fiber. The object of my invention is to bring the working pins of one belt nearer to those of the other, and thereby cause a closer nip of the fiber to be taken between the pins of the two belts."

The screws and connecting mechanical devices for operating the slower-moving series of bars, employed by the respondent, produce a machine free from the defect referred to. The connection of the two series seem to be as close as it is profitable to have them. The respondent has thus accomplished, in a different way, precisely what was intended to be effected by the complainant's subsequent patent. Does not this difference between the machines constitute a substantial distinction, and relieve the respondent from the charge of infringement? We believe it does. The mechanical devices which effect a closer connection between the bars, and consequently produce a better machine, cannot be regarded as mere equivalents for the claimant's, because they do what the latter will not. This may seem to be a slight difference. It is, however, a very important one, and is quite as great, we think, as the difference between the complainant's machine and some of those which preceded it. We attach no importance to the third over-riding series of pin-bars in the respondent's machine. In the absence of the distinguishing feature just referred to, this would be regarded as an improvement, merely, added to complainant's machine.

It would not be profitable to dwell longer on the subject. Sufficient has been said to indicate the grounds on which the decision rests. A decree must be entered dismissing the bill, with costs.